## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF ALABAMA

## EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL CUMBIE, | ) | |
|      Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:05CV569-W |
| | ) | |
| RUBY TUESDAY, INC. | ) | |
| BOBBY VAUGHN, | ) | |
|      Defendants | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

## I.    PROCEDURAL BACKGROUND

Plaintiff, Rachel Cumbie, a former server and bartender for Ruby Tuesday, Inc. ("Ruby Tuesday"), filed the instant suit alleging sex discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* against Ruby Tuesday and Ruby Tuesday's General Manager, Bobby Vaughn, based on the alleged actions of Plaintiff's coworker, Zach Taylor. Additionally, Plaintiff seeks to hold Ruby Tuesday liable for state law claims of invasion of privacy, assault and battery, outrage, and negligent supervision and/or retention. Plaintiff has agreed to voluntarily dismiss Bobby Vaughn as a Defendant to this action. Thus, Ruby Tuesday is the only Defendant to Plaintiff's claims.

## FACTUAL BACKGROUND

Plaintiff began her employment with Ruby Tuesday in Bay Minette, Alabama in the summer of 2001. Deposition of Plaintiff, attached as Exhibit A, p. 24. In the fall of 2002, Plaintiff transferred to a Ruby Tuesday in Opelika, Alabama so that she could attend Auburn

University.  Pl. Depo. p. 30.  Ruby Tuesday employed Plaintiff as a hostess, server and bartender.  Pl. Depo. p. 38.  Plaintiff worked continuously at the Opelika Ruby Tuesday from fall 2002 until she was terminated in May 2004.  Pl. Depo. p. 32.  During the applicable time period, Bobby Vaughn was the General Manager of the Opelika Ruby Tuesday.  Pl. Depo. p. 33; Deposition of Bobby Vaughn, attached as Exhibit B, p. 17.

During her employment, Ruby Tuesday trained Plaintiff on its sexual harassment policy, entitled Respect and Responsibility.  Pl. Depo. p. 25.  Ruby Tuesday's policy is clear that harassment of any kind is not tolerated and that employees are encouraged to report any complaints.  Pl. Depo. p. 27.  At least four times throughout her employment, Plaintiff watched Ruby Tuesday's training video on sexual harassment which describes the numerous reporting options available to employees who believe they have experienced harassment.  Pl. Depo. pp. 26-27, 99, 102; Exhibit 2 to Pl. Depo, Respect and Responsibility Policy; Ex. 3 to Pl. Depo., Open Door Policy.  Specifically, Ruby Tuesday's employees may report perceived harassment to Assistant Managers, General Managers, Directors of People, Standards and Results, Regional Partners, or the Director of Human Resources.  Vaughn Depo. pp. 21-24.  Additionally, employees may call the team member 1-800 hotline to report problems, including perceived harassment.  Id.  Like Plaintiff, Mr. Vaughn is also quite familiar with the Respect and Responsibility Policy and personally trains employees on the policy weekly when he conducts new employee orientation.  Vaughn Depo. p. 20.

Plaintiff acknowledges that she became close friends with many of her Ruby Tuesday coworkers, namely Leanne Jenkins, Enis Kirkland, Kyle Austin, James Burton, Bobby Betts, Sarah Novak and Erica Shehan.  Pl. Depo. pp. 43-44.  In fact, she dated at least one coworker,

Wilfredo Cartagena.  Pl. Depo. p. 42.  Zach Taylor was Plaintiff's "acquaintance," who she occasionally socialized with outside of work.  Pl. Depo. pp. 45, 73.

The thrust of Plaintiff's lawsuit is that that her co-worker, Mr. Taylor, sexually harassed her.  Pl. Depo. p. 74.  Mr. Taylor is openly homosexual.  Pl. Depo. p. 74.  In describing what Mr. Taylor did to bother Plaintiff, Plaintiff began her explanation with the fact that Mr. Taylor came to work and professed that he is gay. Pl. Depo. p. 74.  Plaintiff further claims that Mr. Taylor would come up behind Plaintiff and slap her rear end.  Pl. Depo. p. 74.  However, Plaintiff explained that the act of slapping each other on the rear end was not uncommon and was certainly not done only by Mr. Taylor.  In fact, Plaintiff admitted to slapping several rear ends herself:

> Q:  In – in talking to people it's – there's been indications that it was not uncommon for employees to slap, pat, whatever you want to call it, each other on the but (*sic*).  Is that a fair statement?
>
> A:  Yes, that is fair.  It was not uncommon for that to happen.  Basically **everybody would do it to everybody**.  In a sense they would come up and just try to hit each other as hard as they could to see who would, you know, could hit each other the hardest.  And it started happening to, you know, girls and everything.
>
> Q:  Did you ever do it to anyone?
>
> A:  **Yes.  I did it to Kyle and James and Enis.  I know I did it to Will.  I might have done it to Zach.**  But if they ever told me to stop, I always told – I never did it again.
>
> Pl. Depo. p. 75 (emphasis added).

Though Plaintiff admits that her entire group of friends, including herself, engaged in this mutual rear end slapping, Plaintiff did not accuse Wilfredo, Enis, Kyle, James, Bobby, Erica, Sarah or Leanne of sexual harassment -- only Mr. Taylor.  Pl. Depo. p. 46.  Additionally, Plaintiff admits that Mr. Vaughn never harassed her or touched her inappropriately.  Pl. Depo. pp. 47-48, 103-

105.  Plaintiff also claims that Mr. Taylor came from behind her, reached through her arms and grabbed her breasts four to five times.  Pl. Depo. p. 84.  Plaintiff concedes that initially she did not complain about the alleged rear end slapping until a time when she determined she was offended by it.  Pl. Depo. pp. 99-100.

Plaintiff claims she told a manager in training, "Keely," that if she would not make "it" stop that she would, apparently referring to Mr. Taylor slapping her rear end.  Pl. Depo. p. 77. Plaintiff claimed that "Keely" responded (apparently in recognition of the mutual slapping and horseplay) that Plaintiff was a big girl and that she should take care of it.  Pl. Depo. p. 77. Plaintiff further alleges that Mr. Vaughn saw Mr. Taylor slap her rear end and fondle her breasts, though Mr. Vaughn denies seeing this alleged touching.  Pl. Depo. p. 79; Vaughn Depo. p. 31. Plaintiff concedes that she did not go straight to Mr. Vaughn to complain about Taylor.  Pl. Depo. p. 79.   In fact, though Plaintiff claims the alleged harassment had gone on for months, Plaintiff did not actually complain to Mr. Vaughn until about a week or two before her termination.  Vaughn Depo. p. 33.

Plaintiff described her complaint to Mr. Vaughn as follows:

Q.  Am I correct that in regard to Mr. Vaughn that you spoke to Mr. Vaughn only once regarding Zach?

A:  Yes, **we never really talked about it.**

Q:  I'm sorry, what?

A:  **We never really talked about it at all.**  I just know that there was **once** (*sic*) instance when I did speak to him about it.

Q:  And when you spoke to him that time, did you talk to him about the touching your breasts or just slapping you on the rear end?

A:  I think it was **mostly just slapping on the rear.  I mentioned** the breasts and that **it wasn't cool and that was it.**

Pl. Depo. p. 93.  When Mr. Vaughn received a complaint from Plaintiff, he told her he would take care of the situation.  Vaughn Depo. p. 33.

Mr. Vaughn testified that when he looked into Plaintiff's allegations, employees told him that "they all did it to each other" referring to the slapping of rears within Plaintiff's clique.  Pl. Depo. p. 30.  Nevertheless, Mr. Vaughn met with Mr. Taylor the next time he saw him and told him to stop his behavior and that he was making people feel uncomfortable.  Vaughn Depo. p. 34.  Mr. Vaughn told Plaintiff that he had talked with Mr. Taylor and if there were any other occurrences to please let him know.  Vaughn Depo. p. 34.  Plaintiff does not remember if Mr. Vaughn told her that he talked to Mr. Taylor about her complaint, though she admits it is possible that he told her.  Pl. Depo. pp. 88-89.

Plaintiff's boyfriend at the time, Wilfredo Cartagena, also spoke with Mr. Taylor and told him to stop.  Pl. Depo. pp. 89-90.  Plaintiff does not recall if Taylor ever slapped her rear or grabbed her breast after Wilfredo talked to him.  Pl. Depo. p. 90.  Plaintiff alleges that one week before her termination, she left a message for the 1-800 hotline but her call was not returned.  Pl. Depo. pp. 85-86, 88.  Plaintiff concedes that was her only attempt at contacting the hotline and that she never complained to the District Manager or directly to the Human Resources department, though she knew those options were available.  Pl. Depo. pp. 86-87, 103.  Though Plaintiff claims Mr. Taylor's alleged offensive conduct had been going on for about seven months, her call to the hotline was Plaintiff's first attempt to complain outside of the restaurant.  Pl. Depo. p. 88.  In addition, Plaintiff never made another inquiry of Mr. Vaughn other than the one time she spoke to him.

Plaintiff admits that **even after** she complained about Mr. Taylor, she continued to engage in the same activity, including slapping her "friends" on their rear ends.  Pl. Depo. pp.

80-81.  Plaintiff explained that hitting each other on the rear was "a thing that we just did," and unless someone told her to stop, **"[she] didn't."**  Pl. Depo. p. 82.

In May 2004, Mr. Vaughn terminated Plaintiff for drinking alcohol at work.  Pl. Depo p. 68.  During his meeting with Plaintiff, Mr. Vaughn asked her if she drank alcohol behind the bar during her last shift and she said "yes."  Vaughn Depo. p. 35.  In her deposition, Plaintiff admitted that she drank alcohol at work on at least two occasions.  At about 2 a.m. after the restaurant was closed on the night before her termination, Plaintiff made herself a drink from sample bottles of Vodka that a liquor salesman had left.  Pl. Depo. pp. 60-61.  Plaintiff claims that Mr. Taylor and another co-worker, Erica Shehan, also made the same drink for themselves. Pl. Depo. p. 60.  During the termination meeting, Mr. Vaughn asked Plaintiff about drinking a Margarita at work.  Pl. Depo. p. 65.  Plaintiff testified that on a night preceding the Vodka incident, she made a Margarita that a customer complained about so she put it in a styrofoam cup and tasted[1] it.  Pl. Depo. p. 65.  Plaintiff claimed that she only tasted the Margarita to make sure it contained liquor.  Pl. Depo. p. 66.  Plaintiff admitted that drinking at work violated company rules, that it was not tolerated, and that she should not have done it.  Pl. Depo. p. 62, 68.

Because Plaintiff admitted to Mr. Vaughn that she had drank alcohol at work, Mr. Vaughn terminated Plaintiff.  Vaughn Depo. p. 35.  At that point Plaintiff became very upset and Mr. Vaughn had to ask Plaintiff's boyfriend to escort her out of the restaurant.  Vaughn Depo. p. 36.  Plaintiff agrees that the termination meeting was heated and that Plaintiff and Mr. Vaughn cursed at each other.  Pl. Depo. p. 95.

Plaintiff also claims that her overtime hours that she worked on the night that led to her termination were reduced.  Pl. Depo. p. 96.  Plaintiff admits that the alleged reduction of the time

---

[1] Plaintiff initially testified that she drank the Margarita, but then claimed she only "tasted" it.  Pl. Depo. pp. 65-66.

she worked had nothing to do with her complaint against Mr. Taylor, but instead was done in an attempt to attain a company bonus by minimizing overtime. Pl. Depo. p. 97.

## II.   LAW AND ARGUMENT

### A.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment" is appropriate. *Stedman v. Bizmart, Inc.*, 219 F. Supp. 2d 1212 (N.D. Ala. 2002).

When a party moving for summary judgment:

> does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.
> The second method . . . is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.

*Stedman*, 219 F. Supp. 2d at 1214-15 (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). Here, Plaintiff cannot demonstrate the evidence in the record to support her claims nor will she be able to prove her case at trial.

B.    **Sexual Harassment**

1.    **Burden of proof**

Plaintiff claims that she was subjected to a sexually hostile work environment by Mr. Taylor.  In order to establish a hostile work environment, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive work environment; and (5) a basis for holding the employer liable exists.  *Mendoza v. Borden, Inc*., 195 F.3d 1238, 1245 (11th Cir. 1999), cert. denied, 529 U.S. 1068 (2000).  Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew of should have known of the harassing conduct but failed to take prompt remedial action.  *Sears v. PHP of Alabama, Inc.*, 2006 WL 932044 at *14 (M.D. Ala. 4/10/2006).  Thus, a victim of coworker harassment must show either actual knowledge on the part of the employer of conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer.  *Id.*

Plaintiff claims that she was sexually harassed by Mr. Taylor in the following ways: (1) he often came up behind her and slapped her rear end; and (2) came behind her, reached through her arms and grabbed her breasts four to five times.  Pl. Depo. pp. 74, 84.  With regard to slapping of rear ends, Plaintiff concedes "everybody did it to everybody" and admits that she also engaged in the slapping.  Pl. Depo. p. 75.

2.    **The alleged harassment was not based on Plaintiff's sex.**

Plaintiff cannot satisfy the third element of her claim – that the alleged harassment was based on sex.  Though Plaintiff testified that Mr. Taylor slapped her rear end and touched her

breasts, she made clear that such activity was common among her group of friends.    In fact,

Plaintiff admitted to slapping several rears herself:

> Q:  In – in taking to people it's – there's been indications that it was not
> uncommon for employees to slap, pat, whatever you want to call it, each other on
> the but.  Is that a fair statement?
>
> A:  Yes, that is fair.  It was not uncommon for that to happen.  Basically
> **everybody would do it to everybody**.  In a sense they would come up and just
> try to hit each other as hard as they could to see who would, you know, could hit
> each other the hardest.  And it started happening to, you know, girls and
> everything.
>
> Q:  Did you ever do it to anyone?
>
> A:  **Yes.  I did it to Kyle and James and Enis.  I know I did it to Will.  I might
> have done it to Zach.**  But if they ever told me to stop, I always told – I never did
> it again.
>
> Pl. Depo. p. 75 (emphasis added).

Plaintiff admits that her group of friends, including herself, engaged in this mutual rear

end slapping, but Plaintiff did not accuse Wilfredo, Enis, Kyle, James, Bobby, Erica, Sarah or

Leanne of sexual harassment -- only Mr. Taylor.  Pl. Depo. p. 46.  Plaintiff offers no evidence

that she was singled out for this alleged horseplay or that it had anything to do with her gender.

Instead, Plaintiff testified that the alleged conduct happened to men and women alike and, in

fact, she had done the same thing to men.  Pl. Depo. p. 75.  Further, Plaintiff made clear that Mr.

Taylor is homosexual, which belies that Mr. Taylor had any sexual motivation for his alleged

conduct.  Pl. Depo. p. 74.

The Eleventh Circuit has noted that "there may be cases in which a[n employee] makes

sexual overtures to workers of both sexes or where the conduct complained of is equally

offensive to male and female workers."  *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.

1982).  In *Henson*, the court held that, "in such cases, the sexual harassment would not be based

upon sex because men and women are accorded like treatment." *Id.* Here, because the record evidence is undisputed that the alleged harassing conduct was perpetrated by both men and women and to men and women alike. Thus, Plaintiff cannot show that the harassment was based on sex and her claim must fail.

### 3.    The alleged harassment was not sufficiently severe or pervasive.

Based on the record evidence, Plaintiff also cannot satisfy the fourth element of her sexual harassment claim, that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. Accepting Plaintiff's allegations as true, the alleged conduct does not rise to the level of severity or pervasiveness required within this circuit.

In order to establish that the harassing behavior was severe or pervasive such that it altered the terms or conditions of employment, both a subjective and objective component must be satisfied. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000). Citing Supreme Court authority, the Eleventh Circuit has stated that, to satisfy both prongs, the plaintiff

> Must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim . . . subjectively perceives[s] . . . to be abusive." Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"

*Id.* (internal citations omitted). "Title VII is not a federal 'civility code.'" Id., at 1245. Only when the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the [employee's] employment and create an abusive working environment," is the law violated. *Harris v. Forklift Systems, Inc.,* 510

U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), *quoting, Meritor Sav. Bank v. Vinson,* 477 U.S. 57 at 67.  In determining whether the objective aspect of the test is met, courts look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Id.*

In *Mendoza*, the plaintiff alleged a variety of sexually offensive acts against her supervisor.  She claimed that he told her he was "getting fired up" which she took to be a sexual reference, he rubbed his hip against hers and touched her shoulder while smiling, making sniffing sounds while he looked at her groin area and constantly following her and staring at her. *Id.* at 1247. The Eleventh Circuit concluded that this conduct did not meet the objective requirement. *Id.*

In *Evans v. Mobile Infirmary Medical Center*, 2005 WL 1840235 (S.D. Ala. 8/2/2005), though the Court agreed that the nature of some of the conduct about which the plaintiff complained, namely that the alleged harasser asked "how the girls were doing" (allegedly referring to her breasts) on one occasion, **grabbed her butt** on two occasions and **touched her breast** on one occasion, cannot be characterized as "normal day-to-day interactions between members of the opposite sex," the conduct was neither harassing within the meaning of the law nor sufficiently severe or pervasive so as to alter the plaintiff's terms or conditions of employment. See *Evans*, 2005 WL 1840235 at *10-11 (emphasis added), citing *Jones v. Clinton,* 990 F.Supp. 657, (E.D. Ark. 1998) (hand on leg moving towards pelvis, attempted kiss and exposure of genitals, "while boorish and offensive" ... is not so severe and pervasive ... to have altered condition of employment and created an abusive environment); *Hockman v. Westward Comm. LLC,* 407 F.3d 317 (5th Cir. 2004) (grabbing breasts and "behind" not severe conduct);

*Meriweather v. Caraustar Packaging Co.,* 326 F.3d 990 (8th Cir. 2003) (grabbing buttocks "with force" did not satisfy high threshold of actionable hostile environment); *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526 (7th Cir. 1993) (placing hand on leg above the knee, rubbing upper thigh, kissing and lurching at her did not create an objectively hostile environment).

Recently, in *Mitchell v. Pope*, 2006 WL 1976011 (11th Cir. 7/14/06), the Eleventh Circuit analyzed alleged behavior similar, if not worse, than the alleged conduct at issue in this case and determined that the conduct was not the severe harassment necessary for liability under Title VII. *Mitchell v. Pope*, 2006 WL 1976011 at *2. In *Mitchell*, the plaintiff pointed to 16 specific instances of offensive conduct by the alleged harasser, including "offensive utterances" and three times in which the alleged harasser touched her or attempted to touch her: when he tried to kiss her, when he lifted her over his head, and when he rubbed up against her and **reached across her chest**. The Eleventh Circuit concluded that much of alleged harasser's conduct involved horseplay; and some was not sex-based. Thus, although the Eleventh Circuit described the alleged harasser's behavior as crass and juvenile, such behavior was not the kind of "severe" harassment necessary for liability to attach under Title VII. *Mitchell v. Pope*, 2006 WL 1976011 at *2.

Here, the conduct about which Plaintiff complains consists of Mr. Taylor, a gay man, allegedly slapping Plaintiff on the rear end and grabbing her breasts four to five times. Pl. Depo. pp. 74, 84. Plaintiff cannot claim that this behavior was subjectively offensive to her in light of the fact that she participated in much of the same conduct. Pl. Depo. p. 75. Incredibly, Plaintiff admits that even **after** she complained about Mr. Taylor, she continued to engage in the **same activity**, including slapping her "friends" on the rear end. Pl. Depo. pp. 80-81. Plaintiff explained that hitting each other on the rear was "a thing that we just did," and unless someone

told her to stop, **"[she] didn't."** Pl. Depo. p. 82. In light of Plaintiff's participation in similar horseplay, Mr. Taylor's alleged conduct clearly is not subjectively severe or pervasive to Plaintiff. Further, the record is devoid of any evidence that Mr. Taylor's behavior unreasonably interfered with Plaintiff's job performance.

Additionally, slapping Plaintiff on the rear end and grabbing her breasts four to five times is not objectively severe or pervasive such that to establish liability pursuant to Title VII. The caselaw set forth above illustrates more severe instances of touching and offensive conduct determined to be insufficient to set forth an actionable claim of sexual harassment. Here, accepting Plaintiff's allegations as true, there is simply no evidence of conduct that would create an abusive and intolerable working environment. For the foregoing reasons, Plaintiff's claim of sexual harassment lacks merit and should be dismissed with prejudice as a matter of law.

### C.    Sex Discrimination

Plaintiff makes much of the fact that Mr. Taylor was not terminated when Mr. Vaughn received Plaintiff's complaint of sexual harassment against him, yet Plaintiff was terminated when Mr. Vaughn learned that she drank alcohol while working as a bartender. To the extent that Plaintiff seeks to set forth a claim of sex discrimination through disparate discipline, such claim lacks merit and must fail.

In order to establish a *prima facie* case of disparate treatment under Title VII, the employee must prove that: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999) (citations omitted). In order to make a valid comparison of the plaintiff's treatment to that of non-protected employees, the plaintiff must show that she and those employees are similarly situated in all relevant respects. *Holifield v. Reno,* 115 F.3d 1555, 1562

(11th Cir. 1997). "[T]he quantity and quality of the comparator's misconduct [must] be **nearly identical** to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999).

Once the plaintiff has established a *prima facie* case of disparate treatment, the burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the employee's discipline. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25. If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. In determining whether an employer's stated reason for termination is pretext for discrimination, we have held that a plaintiff can still prove sex discrimination by showing that a male employee with a similar employment history as the plaintiff was not subject to the same adverse employment action, even when an employer has given good reasons-the factual bases of which are unrebutted by the plaintiff-for terminating the plaintiff. *See Rojas v. Florida,* 285 F.3d 1339, 1343-44 (11th Cir. 2002). However, we have always remained careful not to "second-guess a business decision made by" an employer. *Id.* at 1344. Indeed, our "sole concern is **\*613** whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999) (citation omitted), cert. denied, 529 U.S. 1109 (2000). "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Id.* at 1363 n. 3.

Here, Plaintiff cannot meet the third element of her prima facie case, that Ruby Tuesday treated a similarly situated male more favorably. Plaintiff seeks to compare discipline for drinking on the job with alleged sexual harassment. The "quantity and quality of the

comparator's misconduct" is not nearly identical as required by the law.  *Maniccia v. Brown,* 171 F.3d at 1368 (11th Cir.1999).  The Eleventh Circuit instructs that in situations wherein the misconduct is not nearly identical, the Court must not second-guess employers' reasonable decisions and confuse apples with oranges.  *Id.*  Therefore, Plaintiff cannot seek to compare her discipline to that of Mr. Taylor's to set forth a claim of sex discrimination.  To the extent Plaintiff alleges that Mr. Taylor was not disciplined for allegedly drinking the same night as Plaintiff, this claim also lacks merit.  Plaintiff claims that a female employee, Erica Shehan, also had a drink but was not disciplined.  Pl. Depo. pp. 45, 60.  Therefore, a lack of discipline to Mr. Taylor and Ms. Shehan, could not have been attributed to a bias against Plaintiff because of her sex.  Further, neither Ms. Shehan nor Mr. Taylor were working as the bartender when the drinking occurred.  It was Plaintiff's job to oversee the bar, not to lead the group in drinking while she was working.

Further, Ruby Tuesday fired Plaintiff for a legitimate, non-discriminatory reason, drinking on the job.  Pl. Depo p. 68.  Plaintiff testified that she knew that drinking at work violated company rules, that it was not tolerated, and that she should not have done it.  Pl. Depo. pp. 62, 68.  Plaintiff can offer no evidence to show that Plaintiff's termination was pretext for sex discrimination.  Thus, this claim lacks merit and must be dismissed as a matter of law.

**D.    Retaliation**

Plaintiff claims that Ruby Tuesday retaliated against her by cutting overtime hours she already worked and by terminating her.  Complaint, ¶ 14.  Title VII prohibits retaliation against employees who complain of discrimination by filing an EEOC charge or otherwise voice opposition to alleged discriminatory employment practices.  *See* 42 U.S.C. §   2000e-3(a) (providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he [or she] has opposed any practice made an unlawful

employment practice by this subchapter."). The applicable test for considering whether Plaintiff has established a claim of Title VII retaliation, based upon her reliance on circumstantial evidence, follows the *McDonnell Douglas,* burden-shifting formula.

To demonstrate a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) an adverse employment action occurred and (3) a causal link exists between the protected activity and the adverse action. *See Griffin v. GTE Florida, Inc.,* 182 F.3d 1279, 1281 (11th Cir.1999). If she produces evidence sufficient to make out a prima facie case, a presumption arises that Ruby Tuesday unlawfully retaliated against her in taking the alleged adverse employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Ruby Tuesday must then rebut the presumption of a retaliatory motive by producing evidence that the negative employment action was motivated instead by a legitimate, nondiscriminatory reason. *See Id.* at 509.  Ruby Tuesday's "burden is one of production, not persuasion; 'it can involve no credibility assessment." ' *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509).   Finally, to avoid summary judgment, Plaintiff must respond with evidence, which may include previously produced evidence establishing a prima facie case, which would allow a reasonable jury to conclude that the reasons given by Ruby Tuesday were not the real reasons for the adverse employment decision. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), cert. denied, 522 U.S. 1045 (1998); *see also Reeves,* 530 U.S. at 143.  To establish pretext, Plaintiff must offer evidence (1) that Ruby Tuesday's proffered reason has no basis in fact, (2) that the proffered reason did not actually motivate the employment decision, or (3) that the alleged reason was insufficient to motivate the employment decision.  *Sears v. PHP*

*of Alabama, Inc.*, 2006 WL 932044 (M.D. Ala. 4/10/06).

First, regarding the alleged reduction of Plaintiff's hours worked on the night leading to her termination, Plaintiff admits that the alleged reduction had **nothing to do** with her complaint against Mr. Taylor, but instead was done to attain a company bonus.  Pl. Depo. p. 97. Therefore, Plaintiff cannot set forth a causal connection between her alleged complaint and the reduction of her hours.  In fact, she has admitted there is no connection.

Further, Ruby Tuesday terminated Plaintiff for a legitimate, non-discriminatory reason, her violation of Ruby Tuesday's rule against drinking alcohol at work.  Plaintiff admitted that drinking at work violated company rules, that it was not tolerated, and that she should not have done it.  Pl. Depo. pp. 62, 68.  As a result of Plaintiff's own admission, she cannot establish that Ruby Tuesday's proffered reason has no basis in fact, that the proffered reason did not actually motivate the employment decision, or that the alleged reason was insufficient to motivate the employment decision.  Simple temporal proximity between protected activity and the employment action does not create a reasonable inference of retaliation where the record contained "intervening factors," i.e. other reasons for the adverse action arising after the protected activity.  *Sears v. PHP of Alabama, Inc.*, 2006 WL 932044 at *16 (M.D. Ala. 4/10/06) citing *Booth v. Birmingham News Co.*, 704 F.Supp. 213 (N.D. Ala. 1988), *aff'd*, 864 F.2d 793 (1998).  Here, the intervening factor was Plaintiff's admitted violation of an established work rule prohibiting drinking alcohol at work.  Plaintiff simply has no evidence to establish that the stated reason for her termination was pretext for retaliation.

**E.    Ruby Tuesday is not liable for alleged intentional torts committed by Mr. Taylor.**

Plaintiff's Complaint alleges that she was subjected to the intentional torts of invasion of privacy, assault and battery, and the tort of outrage. See Complaint ¶¶ 18-29. In her Complaint, Plaintiff claims that Mr. Vaughn and Ruby Tuesday perpetrated these torts. Id. Nevertheless, in her deposition, Plaintiff admitted that Mr. Vaughn never harassed her or touched her inappropriately. Pl. Depo. pp. 47-48, 103-105. Plaintiff now attempts to claim that the torts were actually committed by Mr. Taylor and that Ruby Tuesday should be held liable for these torts. Mr. Taylor is not a defendant to this action.

Assuming for the purpose of this motion only that Plaintiff could introduce facts supporting her allegations of intentional torts committed by Mr. Taylor, Ruby Tuesday is not liable because it took adequate steps to remedy the situation when it obtained actual knowledge of the conduct. The Alabama Supreme Court has held that an employer is liable for the intentional torts of its employees only if: (1) the employee's acts are within the line and scope of the his employment; (2) the acts were committed in furtherance of the business of the employer; or (3) the employer participated in, authorized, or ratified the wrongful act. See *Machen v. Childersburg Bancorporation, Inc.,* 761 So. 2d 981 (Ala. 1999).

### 1.    Mr. Taylor's alleged torts were not in the line and scope of his employment, or in furtherance of Ruby Tuesday's business.

Plaintiff cannot establish that Mr. Taylor's alleged sexual harassment of Plaintiff was committed in the line and scope of his employment or in furtherance of Ruby Tuesday's business. Under Alabama law, "[a]n employee's tortious acts occur within the scope of his employment if the acts are so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." See *Cartwright v. Tacala, Inc.*, 2000 WL 33287445 at *16 (M.D. Ala. 2000). The Alabama Supreme Court has held that

alleged sexual harassment by a supervisor is not within a supervisor's course and scope of his employment. See *Ex Parte Atmore Community Hospital v. Hayes*, 719 So.2d 1190, 1194 (Ala. 1998) (alleged battery and invasion of privacy of a sexual nature by supervisor were "entirely personal in nature, and not within his assigned duties"; therefore, the employer could not be held liable for the alleged conduct); see also *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990) (holding sexual misconduct, including assault and battery by an employee, is strictly personal and outside the line and scope of employment).

In this case, Mr. Taylor's alleged inappropriate sexual conduct is that of a personal nature having no relationship to Ruby Tuesday's business. The alleged touching by Mr. Taylor and Plaintiff is clearly against Ruby Tuesday's written harassment policy and outside the scope of employment. Slapping Plaintiff on the rear or touching her breasts certainly did not fall within Mr. Taylor's assigned duties. Therefore, Mr. Taylor's alleged tortious conduct was not committed in the line and scope of his employment or in furtherance of Ruby Tuesday's business.

**2.       Ruby Tuesday did not ratify Mr. Taylor's alleged actions.**

The central inquiry to determine whether Ruby Tuesday is liable to Plaintiff is whether Ruby Tuesday participated in, authorized, or ratified Mr. Taylor's alleged wrongful conduct. In order to make such a showing, an employee must present substantial evidence that Ruby Tuesday expressly adopted Mr. Taylor's behavior or implicitly approved of it. See *Machen*, 761 So. 2d at 985. The Alabama Supreme Court instructs:

> "If the undisputed evidence shows that the employer, as soon as it was practical to do so after learning of the conduct, took steps to stop the tortious conduct and the tortious conduct stopped, the steps taken by the employer were adequate as a matter of law. Conversely, evidence that an employer after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee

presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate."

*Potts v. BE & K Constr. Co.,* 604 So. 2d 398, 400 (Ala. 1992).

*Cartwright v. Tacala, Inc.*, 2000 WL 33287445 (M.D. Ala. 2000) contains facts similar to this case. In *Cartwright*, a restaurant employee alleged the restaurant manager touched her in a sexually offensive manner and asked her questions about her sex life. See *Id.* at * 3. The plaintiff allegedly reported the manager's conduct to the restaurant's assistant manager, who told the plaintiff not to tell anyone or the manager would make it unbearable for her. See *Id.* at * 4. The plaintiff eventually quit after an upper level manager yelled at her in the store. *Id.* Subsequently, the plaintiff filed a lawsuit alleging numerous causes of action against her employer and manager, including the intentional torts of invasion of privacy, assault, and battery. The court found sufficient fact questions to deny summary judgment for the restaurant manager on the intentional tort claims. See *Id.* at * 15. The court then considered whether the employer could be held liable for the intentional torts. First, the court determined that the plaintiff had presented insufficient evidence that the manager's conduct was within the line and scope of his employment. See *Id.* at * 17. Next, the court considered whether the employer ratified the manager's conduct in light of the plaintiff's complaint to the restaurant's assistant manager. The court found that because the plaintiff only chose to report the alleged harassment to the store's assistant manager, who worked for the manager and had no supervisory authority over him, the plaintiff had not presented sufficient evidence to demonstrate a genuine issue of material fact whether the employer had actual knowledge of the manager's alleged sexual harassment of the plaintiff. See *Id.* at * 18. Without actual knowledge, the court found the employer did not ratify the conduct and summary judgment was appropriate in favor of the employer on the plaintiff's

tort claims.  See *Id.*; see also *Ex Parte Atmore Community Hospital v. Hayes*, 719 So.2d 1190, 1194 (Ala. 1998) (Alabama Supreme Court held summary judgment should have been granted for employer on battery and invasion of privacy claims because employer's actions were appropriate in light of following facts: the plaintiff reported her supervisor's alleged harassment to the hospital administrator who spoke with the alleged harasser and instructed him not to touch the plaintiff in an offensive manner or invade her privacy again and thereafter the sexual harassment stopped)*; se*e also *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364 (Ala. 1985) (holding employer not liable for the intentional torts of its employee, who allegedly attempted to force complaining employee to engage in homosexual sex, when the evidence showed the employer took swift action to investigate the conduct, told the offending employee he would be laid off if there were any more complaints, told the complaining employee it would not happen again, and the conduct stopped).

In this case, Ruby Tuesday did not ratify Mr. Taylor's actions.  Plaintiff admits that she did not go straight to the General Manager, Mr. Vaughn, to complain about Taylor.  Pl. Depo. p. 79.  In fact, though Plaintiff claims the alleged harassment had gone on for months, Plaintiff did not actually complain to Mr. Vaughn until about a week or two before her termination.  Vaughn Depo. p. 33.

Even then, Plaintiff described her complaint to Mr. Vaughn as a casual conversation and stated "we never really talked about it."  Pl. Depo. p. 93.  When Mr. Vaughn received a complaint from Plaintiff, he told her he would take care of the situation.  Vaughn Depo. p. 33. When he looked into Plaintiff's allegations, employees told Mr. Vaughn that "they all did it go each other" referring to the slapping of rears within Plaintiff's clique.  Pl. Depo. p. 30. Nevertheless, Mr. Vaughn met with Mr. Taylor the next time he saw him and told him to stop his

behavior and that he was making people feel uncomfortable. Vaughn Depo. p. 34. Mr. Vaughn told Plaintiff that he had talked with Mr. Taylor and if there were any other occurrences to please let him know. Vaughn Depo. p. 34. Plaintiff does not remember if Mr. Vaughn told her that he talked to Mr. Taylor about her complaint, though she admits it is possible that he told her. Pl. Depo. pp. 88-89.

Thus, it is undisputed that when Plaintiff finally did alert Mr. Vaughn about Mr. Taylor's alleged, Mr. Vaughn promptly took adequate steps to remedy the situation by talking to Mr. Taylor and demanding that he stop the alleged conduct. Plaintiff has offered no evidence that Mr. Taylor continued his alleged conduct after Mr. Vaughn spoke with him. However, Plaintiff admitted that **she continued her own inappropriate behavior** after she complained about Mr. Taylor, including slapping her "friends" on the rear end. Pl. Depo. pp. 80-81.

Ruby Tuesday has a comprehensive training program to educate all employees on harassment and how to report sexual harassment. Further, Ruby Tuesday's manager, Mr. Vaughn, acted swiftly to correct any alleged inappropriate conduct when Plaintiff finally complained to him. Thus, summary judgment should be granted in Ruby Tuesday's favor, dismissing Plaintiff's intentional tort causes of action against it with prejudice and at Plaintiff's costs.

**F.    Plaintiff's Negligence Claims Against Ruby Tuesday Fail as a Matter of Law.**

Plaintiff further claims that Ruby Tuesday is liable for negligent supervision and retention. An employer is held responsible for his servant's incompetence when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. See *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993). Liability depends on the plaintiff establishing

by affirmative proof that incompetence was actually known by the employer or that had the employer exercised due and proper diligence the employer would have learned of the incompetence of the employee.  See *Id*.  The plaintiff must prove the negligence by proper evidence, such as showing specific acts of incompetence and showing the knowledge of the employer or by showing the acts to be of such nature, character, and frequency that the employer, in the exercise of due care, must have known.  See *Id*.

Plaintiff has absolutely no evidence of any complaints of inappropriate behavior by Mr. Taylor prior to Plaintiff's allegations against him.  See *Norman v. Southern Guaranty Ins. Co.,* 191 F. Supp. 2d 1321, 1337 (M.D. Ala. 2002) (granting summary judgment to employer on negligent supervision, training, and retention claims because the plaintiff failed to prove that the employer was put on notice of its employees' propensity to intentionally discriminate and retaliate against other employees); See *Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1330-1331 (M.D. Ala. 2001) (granting employer's motion for summary judgment on employee's negligent supervision and negligent retention claims due to employee's failure to prove the employer knew or should have known of a manger's incompetence);  See *Ahart v. Host Marriott Corp.*, 1996 WL 1057054, * 7 (M.D. Ala. 1996) (granting employer's motion for summary judgment on negligent supervision and negligent training claim because it was undisputed the employer had reviewed its sexual harassment policies with the alleged harasser before the alleged harassment).

Here, as in the *Norman* and *Bonham* cases, Ruby Tuesday did not have knowledge of any prior complaints of inappropriate behavior by Mr. Taylor to substantiate Plaintiff's negligent supervision and retention claims.  Therefore, Plaintiff's causes of action for same should be summarily dismissed with prejudice and at Plaintiff's costs.

## III.    CONCLUSION

Plaintiff's claims are without merit and supported only by her own conclusory and self-serving testimony.   Thus, summary judgment is appropriate and Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,

**/s/ Cornelius R. Heusel_____ _____**
CORNELIUS R. HEUSEL (La. 06849)
JENNIFER A. FAROLDI (La. 25668)
**JONES, WALKER, WAECHTER,**
**POITEVENT, CARRERE & DENEGRE L.L.P.**
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone:  504-582-8000
Facsimile:  504-582-8015

*Attorneys for Defendant,*
*Ruby Tuesday, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following as follows:

C. Michael Quinn
H. Wallace Blizzard
WIGGINS, CHILDS, QUINN & PANTAZIS, P.C.
301 19th Street North
Birmingham, Alabama 35203

Sherrie V. McKenzie
Attorney at Law
25 West Claiborne Street
Monroeville, Alabama 36460

**/s/ Cornelius R. Heusel_____**