IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL CUMBIE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:05-CV-569-W |
| | ) | |
| RUBY TUESDAY, INC | ) | |
| BOBBY VAUGHN | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.    STATEMENT OF FACTS**

Plaintiff was hired by Ruby Tuesday in Bay Minette, Alabama in the summer of 2001.

Pl. Depo. p. 24.  In the fall of 2002, Plaintiff transferred to a Ruby Tuesday in Opelika, Alabama

so that she could attend Auburn University.  Pl. Depo. p. 30.  She was employed as a hostess,

server and bartender.  Pl. Depo. p. 38.  Plaintiff worked continuously at the Opelika Ruby

Tuesday from the fall of 2002 until she was terminated in May 2004.  Pl. Depo. p. 32.  During

the time period of this lawsuit, Bobby Vaughn was the General Manager of the Opelika Ruby

Tuesday.  Pl. Depo. p. 33 Vaughn Depo. P. 17.

During Plaintiff's employment, Ruby Tuesday had a sexual harassment policy that was

known by her entitled Respect and Responsibility.  Pl. Depo. p. 25.  It stated that sexual

harassment could be reported to any member of management and required anyone seeing such

conduct to report it to management.  Exh. 2, Pl. Depo.  Bobby Vaughn was familiar with this

policy.  Vaughn Depo. p. 20.

There was also a video which was shown to Bobby Vaughn that informed him that it was his responsibility as a manager to stop inappropriate behavior if he saw it or it was reported to him. He also had discretion as to how to handle the situation.  Vaughn Depo. pp. 25-26.  The policy stated, "If you see a violation of Company policy, you must promptly inform us."  Exh. 2, Pl. Depo.

During her employment, it was not uncommon for employees to slap or pat each other on the rear-end.  In fact everybody would do it to everybody.  The plaintiff also did it.  Pl. Depo. p. 75.  Plaintiff described it as not happening daily, but if someone hit her on the rear-end she would hit them back.  Pl. Depo. p. 83.  Plaintiff described this conduct in her EEOC charge as follows:

> "From the time I started in Auburn there was a sexually charged atmosphere inasmuch as there was a great deal of butt slapping on the females by the male employees.  At first, we had a manager named Terry Abbott.  She was a female and the harassment was not as bad under her.  She left around nine months ago.  After that, Bobby Vaughn became our manager.  He came from a different (sic) store.  After that, the harassment became increasingly more severe.  The guys started slapping us harder and harder.  Bobby saw it all the time, and laughed, like it was sport to see who could hit us harder.  I have left the restaurant with handprint shaped bruises on my behind."  Exh. 1, Pl. Depo.

Bobby Vaughn admitted that he had observed this conduct.  Vaughn Depo. p. 40.  Nothing was ever done to stop the slapping.  Pl. Depo. p. 80.  Even managers-in-training engaged in the slapping.  Pl. Depo. p. 104.  Plaintiff would have liked for the slapping to stop but she knew it was not going to stop.  Pl. Depo. p. 102.  In addition to the slapping, there were also times when the co-employees would pop Plaintiff and other women with a towel.  Pl. Depo. pp. 78-79.

One of the co-employees involved in the slapping was Zach Taylor.   He started working at Ruby Tuesday several months before Plaintiff was terminated. Exh. 1, Pl. Depo.  When he began working he professed himself gay and started coming up behind Plaintiff and would "slap

the tar out of my butt".  He would slap it as hard as he could and it would make Plaintiff scream

and it would leave handprints and bruises.  Pl. Depo. pp. 74-75.  What made it different with

Taylor was that Plaintiff would tell him to stop and he wouldn't.  In fact, he never stopped.  Pl.

Depo. p. 75.  Plaintiff believed he used his sexual preference as an excuse to continue to harass

her.  Exh. 1, Pl. Depo.  On one occasion Plaintiff was at the hostess stand when Taylor hit her

hard on the butt in front of the customers.  It hurt but Plaintiff couldn't do anything because the

customers were there.  Pl. Depo. p.77.  He would also do it in the kitchen.  He did it three times

before Plaintiff went to a manager-in-training, Keely, and reported it.  Plaintiff told her "Look, if

you don't make him stop, I will."  Keely's response was "Well, you're a big girl.  Do it yourself.

You can take care of this."  Pl. Depo. p. 77.  Once while showing another employee how to

punch an order, Taylor slapped her so hard that it made her scream out loud " Will you f—ing

stop."  At this point Keely turned around and said "Will you f—ing stop yelling so loud?"  Pl.

Depo. p. 77.

At the same time that Taylor started slapping Plaintiff, he also started fondling her

breasts.  He would come up behind her and grab her.  She wouldn't even know he was there.  He

did this four or five times.  He would say things like "Oh, yeah.  These are real nice.  These are

real nice."  On this occasion and others Bobby Vaughn saw what he was doing.  Plaintiff would

look at him and he would just laugh.  Pl. Depo. pp.84-85.  He would smile and go about his

business.  Pl. Depo. p. 85.  Vaughn had also seen Taylor hit Plaintiff on her butt and didn't do

anything.  Pl. Depo. p. 79.  In fact, neither he or Keely had ever done anything about Taylor so

Plaintiff called the 800 number but never got an answer back.  Pl. Depo. pp. 79-80.   She told

them she was being sexually harassed and didn't know what to do about it and left her cell phone

number.  Pl. Depo. 87.  This was done about a week before her termination.  She didn't call

sooner because nothing had been done and she didn't think anything

would be done.   Pl. Depo. p. 88.  Plaintiff had also spoken to Vaughn once or twice about

Taylor and how he made her feel uncomfortable and how the atmosphere in the restaurant was

uncomfortable and nothing was done.  Pl. Depo. p. 80.   Plaintiff does not remember Vaughn

telling her that he had talked to Taylor about his behavior.  Her belief was that nothing was done.

Pl. Depo. pp. 88-89.  Taylor was hitting her on her butt repeatedly and the incident when she

screamed and told Keely was not too long before she was terminated.  Pl. Depo. p.92.  Vaughn

remembers that Plaintiff came to him and complained about Taylor slapping her butt and

fondling her breasts.  This was about two weeks before her termination.  He went to Taylor and

told him to stop the slapping and fondling.  He then told Plaintiff that he had talked to Taylor.

Vaughn Depo. pp. 32-34.

       After Plaintiff had complained to Vaughn about Taylor and Taylor had been counseled by

Vaughn, Taylor came to Vaughn and told him that Plaintiff had been drinking behind the bar.

Vaughn Depo. p. 34.   When Vaughn asked Plaintiff about it she told him that it was at one-thirty

in the morning and she was cleaning behind the bar.  A representative had brought some

miniatures of Watermelon Vodka in that night and she, Erica and Zack Taylor wanted to see

what they tasted like.  They asked the manager if it was alright and she said yes, "As long as I do

not see it."  She fixed a drink and Erica and Zack fixed them a drink.  Plaintiff had one sip and

then continued cleaning because she didn't like it and Erica and Zack sat and drank theirs.

Vaughn then brought up another occasion when Plaintiff had drank a Margarita.  Plaintiff denied

that she drank it, but instead she tasted a customer's drink after the customer questioned whether

it had alcohol in it.  She had been trained to do this and Bobby Betts, the manager on duty

watched her pour it in a cup and take one sip.  Vaughn said this was all about her and not others

and told her she was terminated.  Pl. Depo. pp. 58-70.  Records produced to the EEOC


show that neither Erica or Zack Taylor were terminated.  Those records also show that although

the number of males and females is almost equal the only other employees terminated for rules

violation were females (2).  Exh. 3.  (From EEOC file).

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 provides that a summary judgment is to be granted only if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The procedure a district court in the Eleventh

Circuit must follow in deciding motions for summary judgment is set out in *Clark v. Coats &*

*Clark*, 929 F.2d 604 (11th Cir. 1991):

> The moving party bears the initial burden to show the district court, by reference to
> materials on file, that there are no genuine issues of material fact that should be
> decided at trial. Only when that burden has been met does the burden shift to the
> non-moving party to demonstrate that there is indeed an issue of material fact that
> precludes summary judgment.

*Id*. at 608.

"As the moving party, [the defendant] has the burden of showing the absence of a genuine

issue of material fact, and for these purposes the material it lodged must be viewed in the light

most favorable to the opposing party."  *Addaxes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Matsushita Electric Industries Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hairston v. Gainesville Sun Publishing Co.*, 9

F.3d 913, 918 (11th Cir. 1993).  The district court cannot weigh conflicting evidence or make

credibility determinations; instead, "'[the evidence of the non-movant is to be believed, and all

justifiable inferences

are to be drawn in his favor.'"  *Hairston*, 9 F.3d at 919 (quoting *Anderson*, 477 U.S. at 255).  In

order to make clear that the non-moving party has no duty to present evidence showing a disputed

issue of fact unless and until the moving party has met its initial burden, the *Coats & Clark* court

analyzed *Adickes* as holding the following:

> To summarize, the *Adickes* rule remains the general rule.  The moving party bears
> the initial burden to show the district court, by reference to materials on file, that
> there are no genuine issues of material fact that should be decided at trial.  Only
> when that burden has been met does the burden shift to the non-moving party to
> demonstrate that there is indeed a material issue of fact that precludes summary
> judgment.  *Celotex* did not change the general rule.  *Celotex* simply holds that under
> certain circumstances the movant may meet its Rule 56 burden without negating an
> element of the non-moving party's claim and that under such circumstances it is
> sufficient to point to materials on file that demonstrate that the party being the
> burden of proof at trial will not be able to meet that burden.  Even after *Celotex* it is
> never enough simply to state that the non-moving party cannot meet its burden at
> trial.

*Coats & Clark*, 929 F. 2d at 608.

If the moving party carries this burden and shows the lack of a material question of fact and

its entitlement to judgment as a matter of law, then -- and only then -- the party opposing the

motion must show the existence of a genuine issue of material fact.  *Hairston*, 9 F.3d at 918 (citing

*Matsushita*, 475 U.S. at 586-87; *Coats & Clark*, 929 F.2d at 608).  The substantive law defines

which facts are "material."  *Anderson*, 477 U.S. at 248.  A factual dispute is "genuine" if "a

reasonable jury could return a verdict for the non-movant," and there is "a real basis in the record"

for the factual dispute.  *Hairston*, 9 F.3d at 919 (citing *Anderson*, 477 U.S. at 248; *Matsushita*, 475

U.S. at 586-87)).

**III.    <u>ARGUMENT</u>**

**A.  Plaintiff's Hostile Environment Analysis**

A plaintiff who alleges sexual harassment against a supervisor is afforded two avenues by which

to hold the defendant employer liable.  First, if the sexual harassment by the supervisor results in a

tangible employment action against the plaintiff, then the employer is vicariously liable to the

plaintiff for the sexual harassment.  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118

S.Ct. 2257,

2269, 141 L.Ed.2d 633 (1998).  In this situation, the employer is not allowed to raise an affirmative

defense to the vicarious liability.  Second, if the sexual harassment by the supervisor does not result

in a tangible, employment action being taken against the plaintiff, the employer still may be held

vicariously liable for the supervisor's conduct.  *Id.* at 765, 118 S.Ct. at 2270.  However, in this

situation, the employer may raise an affirmative defense to the liability.  *Id.*  This affirmative

defense is comprised of two parts, (1) that the employer exercised reasonable care to prevent and

promptly correct the sexual harassment; and (2) that the employee unreasonably failed to take

advantage of any preventative or corrective opportunities provided by the employer. *Id.*

It has been long established that whether a hostile environment exists is a question of fact

to be determined upon consideration of the "totality of the circumstances." *Meritor Savings Bank*

*v. Vinson*, 477 U.S. 57, 69, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).  In *Harris v. Forklift*

*Systems, Inc.*, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), the Supreme Court unanimously held

that the factual issue to be decided in a claim of abusive or hostile work environment is whether

the environment, based on all facts and circumstances, was so discriminatory, abusive, or hostile

that it altered the terms and conditions of employment for those within the protected class.

*Harris*, 114 S. Ct. at 370.       A hostile environment claim is a single cause of action based on the totality of the circumstance, and not a series of causes of actions based on each act of harassing conduct.  *Morgan*, 122 S.Ct. at 2066-67;

*Harris*, 114 S. Ct. at 371; *see also West v. Philadelphia Electric Co.*, 45 F.3d 744, 753 (3d Cir. 1995); *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989).  Acts predating the statutory claim period, acts of different harassers, and acts not directed specifically at plaintiffs may be considered by the finder of fact as evidence that a hostile work environment existed and that the employer allowed the harassment to continue.[1]

> Because a hostile work environment claim is a single cause of action, rather than a sum of discrete claims, each to be judged independently, ***the focus is the work atmosphere as a whole***.  If an employer knowingly (actually or constructively) permits a hostile work environment to exist, ***it is of no import that the collection of incidents comprising the claim were committed by a variety of individuals***.  Rather, by implicitly condoning harassing behavior, the employer may facilitate its spread by a greater number of harassing employees.  As one court has observed, "A hostile work environment is like a disease.  It can have many symptoms, some of which change over time, but all of which stem from the same root.  The etiology in this case is pure gender bias."

*West v. Philadelphia Electric Co.*, 45 F.3d 744, 756-57 (3d Cir. 1995)(quoting *Hansel v. Public Service Co.*, 778 F. Supp. 1126, 1132 (D. Colo. 1991) & citing *Waltman v. International Paper Co.*, 875 F.2d 468, 474-75 (5th Cir. 1989))(emphasis added).  Such positions were reiterated by the United States Supreme Court in *Morgan*.

---

[1]The determination of whether a reasonable person would have found the environment was abusive or hostile "must be answered on a **full record** and upon **evaluation of live testimony**. Consequently, so long as the plaintiff has alleged actionable incidents of [discriminatory] harassment, the determination of whether they have created a hostile work environment must await trial."  *Blesedell v. Mobile Oil Co.*, 708 F. Supp. 1408, 1419 (S.D.N.Y. 1989)(emphasis added).

The Supreme Court in *Harris v. Forklift Systems* set forth the standard for evaluating a claim for hostile environment based on harassment. This standard was reiterated by the Supreme Court in *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed. 2d 662 (1998). In order to determine whether discriminatory harassment is actionable under Title VII, the plaintiff must establish (1) sexually discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 114 U.S. S.Ct. at 370; *See also, Faragher*, 118 S. Ct. 2275.

In order to establish a prima facie case of hostile work environment sexual harassment, the plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Watson v. Blue Circle,* 324 F.3d 1252, 1257 (11th Cir. 2003)(citing *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999)(en banc).

Defendant's challenge to the second element of plaintiffs' prima facie case is baseless. The evidence in the record establishes that Plaintiff belongs to a protected class and that she was subject to conduct of a sexual nature which was based upon her sex. She states throughout her deposition and in her EEOC charge that the atmosphere was sexually charged in the restaurant. Her testimony regarding the slapping on the butt was that the men did it to the women and that the women did it in response because nothing was done by management to stop it. Instead of stopping it management told Plaintiff she was a big girl and could take care of herself. A jury could easily infer that the slapping by the plaintiff was done as a protective measure or an attempt

to make the atmosphere less sexually charged by making it a joke.  As she stated however, she would have preferred that it stopped and that she did not have to respond.  She did not respond to the towel popping incidents.  Most importantly, the

slapping of the behind was not the worst instance of conduct of a sexual nature.  Taylors' grabbing of Plaintiffs breasts from behind and fondling them was clearly an act perpetrated because of Plaintiff's sex.  The second element is easily met.  The remaining issue is whether or not the conduct alleged by plaintiff was sufficiently severe or pervasive and if so, whether there is a basis for holding defendant liable for the harassing conduct.

### 1.  The conduct which Plaintiff was subjected to was so severe and pervasive as to preclude summary judgment.

Under well-established law, a hostile work environment sexual harassment plaintiff must demonstrate that the harassment adversely affected the terms and conditions of her employment by being so severe or pervasive that it created a hostile working environment.  This requirement does not mean that the plaintiff must show actual psychological harm as a result of the harassment.  "So long as the environment would reasonably be perceived, and is perceived as hostile or abusive, there is no need for it also to be psychologically injurious."  *Harris*, 114 S. Ct. 367, 371 (1993).

"Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and the harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." *Johnson v. Booker T. Washington Broadcasting Service,*

*Inc.,* 234 F.3d 501, 509 (11th Cir. 2000).

In *Harris*, the Supreme Court discussed the relevant considerations for determining whether a hostile environment exists:

> [W]e can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on an employee's well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 114 S. Ct. at 371.

In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit Court of Appeals recognized that the determination of whether the environment was objectively hostile depends upon "the totality of the circumstances."  *Andrews*, 895 F.2d at 1484.  The court aptly noted, "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."  *Id.*

The Supreme Court affirmed the validity of the "totality of the circumstances" analysis for determining the hostility of the environment in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998):

> [T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.  Common sense, and an appropriate sensitivity to social context [are required].

*Oncale,* 118 S. Ct. at 1003.

      In the instant case, the plaintiff has presented evidence in the record regarding the following

instances which she contends are both subjectively and objectively severe and pervasive: (1) The atmosphere was sexually charged by the actions of the males to the females, (2) from the beginning of her employment until her termination the men would slap the women on their butts, sometimes hard enough to leave a handprint and bruises, (3) the men would pop the women's butts with a towel, (4) the slapping and popping was done by at least one manager-in-training, (5) plaintiff herself was slapped continuously by males and would respond by slapping back, (6) Zack Taylor would slap the plaintiff constantly, sometimes as much as five times in a shift and so hard it left handprints and bruises, (7) even after being told to stop the slapping, Taylor continued to slap the plaintiff, (8) on four or five occasions Taylor would come up behind the plaintiff and grab and fondle her breasts and say things like, "Oh, Yeah, these are real nice.", (9) the slapping and the fondling were seen by managers Keely and Vaughn who would not stop it, (10) Vaughn even smiled when he saw Taylor fondle Plaintiff's breasts and took no action.

      The Eleventh Circuit in *Johnson vs. Booker T Washington Broadcasting* held that the conduct alleged by the plaintiff was sufficiently severe and pervasive enough to fall within the definition of sexual harassment.  234 F3d at 509.  The facts of the instant case are similar, and in fact more egregious, than the "continuous barrage of sexual harassment" found to exist in *Johnson*.  *Id.*, citing *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999).

      In the case at bar, the Court must look at the totality of circumstances and based on a

review of the evidence in the record, a reasonable jury could find that the harassment as alleged was severe and pervasive. Working in an environment polluted by sexual harassment violates the terms and conditions of plaintiffs' employment under Title VII. Plaintiff was subjected to a continuous barrage of harassment

by male co-workers and especially Zack Taylor and such conduct continued even after it was seen by management. The conduct by Zack Taylor was not just crude, but sexually explicit and invasive. More importantly, it amounted to a physical assault after nothing was done by management.

Defendants argue in their brief that the actions of the men who slapped the plaintiff and others was not sexual harassment because the women did it too. The point the defendant fails to make is that the women only did it after the men would do it and it was a defense mechanism, not a continuation of the harassment. As Plaintiff stated, some objected to it but it continued and she would much rather it

stopped than for her to have to continue to hit back. And defendants fail to address the fondling of the plaintiff's breasts by Taylor. Clearly, when viewed in its entirety, the evidence meets the severe or pervasiveness required by this circuit.

Based on the evidence in the record, a reasonable jury could conclude that such harassment was severe and pervasive so as to create an abusive working environment and summary judgment should be denied.

### 2. Defendant knew or should have known of the harassment.

The standard in the Eleventh Circuit for proving employer liability in a co-worker

harassment case is clearly stated in *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278

(11th Cir. 2002).

> Where the perpetrator of the harassment is merely a co-employee
> of the victim, the employer will be held directly liable if it knew or
> should have known of the harassing conduct but failed to take
> prompt remedial action.  *See Breda v. Wolf Camera & Video*, 222
> F.3d 886, 889 (11th Cir. 2000).

*See also, Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997)(employer is directly

liable

for hostile environment sexual harassment if it knew or reasonable should have known of the

harassment and failed to take prompt remedial actions); *Morgan v. Felini's Pizza, Inc.*, 64

F.Supp.2d 1304, 1312 (N.D.Ga. 1999)(plaintiff must prove employer knew or should have

known of harassment and failed to take prompt action to remedy the situation).  "A plaintiff can

prove that the employer had knowledge of the harassment by showing that she complained to

higher management or by showing that the harassment was so pervasive that the employer can be

charged with constructive knowledge of the harassment."  *Allen*, 121 F.3d at 647; *Huddleston v.*

*Roger Dean Chevrolet, Inc*., 845 F.2d 900, 904 (11th Cir. 1988).   "The question of constructive

knowledge is an issue of fact."  *Allen*, 121 F.3d at 647; *Reich v. Department of Conservation and*

*Natural Resources, Alabama*, 28 F.3d 1076, 1082 (11th Cir. 1994).  Plaintiff asserts that there are

genuine issues of fact precluding summary judgment as to whether defendant had actual and/or

constructive notice of the harassment that was ongoing at its facility and of which plaintiff

complained.

        First and foremost, the plaintiff states that the manager of the restaurant, Bobby Vaughn

witnessed the slapping and the fondling of her breasts and did not to prevent or stop it.  She also

states that another manager, Keely saw this conduct.  Further statements by her are that she

complained to these managers that the conduct was unwelcome and should stop.   Therefore, the

defendant cannot claim mere "ignorance' of the harassment as members of management were

present when the some of the incidents of  harassment occurred and were well aware of the

sexually explicit remarks of Autry.  *See Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp.

1486, 1530 (M.D. Fla. 1991)(employer may not rely on an "ostrich defense" by ignoring warning

signs that the atmosphere is charged with sexual harassment); *see also, Morgan v. Fellini's*

*Pizza, Inc.*, 64 F. Supp. 2d 1304, 1314 (N.D. Ga.


1999)(employer charged with notice where manager, who had authority to discipline all

employees working on a shift, was present during the harassing conduct).  Based on the severity

and pervasiveness of the conduct, along with plaintiff's complaints, a reasonable jury could

conclude that defendant had constructive knowledge of the harassment.  This is especially true

when viewing all of the evidence in favor of plaintiff.  At a minimum, disputed issues of fact

exist.  For purposes of summary judgment defendant clearly knew that the unwelcome conduct

was occurring and that the sexual harassment that existed prevented such conduct.

    The evidence establishes that the defendant had a policy against sexual harassment in

place. While it is true that defendant had a policy which prohibited sexual harassment, merely

having a policy in place is not a complete shield from liability.  The company must also

effectively enforce the policy and respond to complaints of its employees.   The Eleventh Circuit

in *Farley* stated "[w]here there is evidence from which a jury reasonably could infer that the

employer did know of the harassment, of course, the existence of a policy -- no matter how well-

designed -- will not absolve an employer of liability under Title VII." *Farley v. American Cast*

*Iron Pipe*, 115 F.3d. 1548, 1554 (11th Cir 1997).  The fact that these managers knew of harassing

conduct yet never reported it or took appropriate action to stop it is especially disturbing.  Clearly,

they had a duty to do something about the sexual harassment when they saw it.  The fact that they

did not report the harassment or take appropriate action is evidence that it the company's policy is

not worth anything more than the paper that it is printed on.

> Notification of sexual harassment to an employer need not come solely from the
> victim of the harassment for knowledge to be imputed to the employer. . .  [This
> holding] that employer liability could attach if information of the harassment had
> come to the attention of someone who is reasonably believed to have a duty to
> pass on the information does not require that the victim of the harassment be the
> source of the information.

*Sims* v. *Health Midwest Physician Services*, 196 F.3d 915, 920 (8th Cir. 1999).  There was clearly

appropriate knowledge of the inappropriate conduct by management to defeat summary

judgment.

### 3.  Defendant failed to take prompt and effective remedial action.

After it is established that the employer had notice, either actual or constructive, a Title

VII plaintiff must show that the defendant "failed to take immediate and appropriate corrective

action." *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1259 (11th Cir. 2003).

As stated by the court in *Portera v. Winn-Dixie of Montgomery, Inc.*, 996 F.Supp. 1418

(M.D.Ala. 1998),

> ... the Eleventh Circuit has held that the standard for determining
> whether or not remedial actions are appropriate is whether the
> remedy is "reasonably likely to prevent the misconduct from
> recurring." *Reynolds v. CSX Transportation*, 115 F.3d 860, 868
> (11th Cir. 1997).

996 F. Supp at 1427-28.  It is not enough that the employer simply take some form of responsive

action.  In order for the employer's response to qualify as a prompt remedial action it, "must be

*effective* action in order to exempt an employer from liability." *Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1528 (M.D.Ala. 1994). More specifically, courts in this Circuit have held that the remedial action

> ... must be 'reasonably calculated to end the harassment,' and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the sexual harassment ended after the remedial action was taken.

*Munn v. Mayor and Aldermen of City of Savannah, Georgia*, 906 F.Supp 1577, 1583 (S.D.Ga. 1995)(internal citations omitted), quoting *Sanchez v. City of Miami Beach*, 720 F.Supp. 974, 981

(S.D.Fla. 1989), and *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983). The employer acts unreasonably either if it delays unduly or if the action it does take, however promptly, is not reasonably likely to prevent the misconduct from recurring. *See Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990); *Degitz v. Southern Management Services, Inc.*, 996 F. Supp. 1451, 1459 (M.D. Fla. 1998)(question of fact precluded summary judgment on the issue of the promptness of the remedial action where the employer delayed two weeks before acting on the Plaintiffs' complaint of harassment). *Saville v. Houston County Healthcare Authority*, 852 F. Supp. 1512, 1528 (M.D. Ala. 1994)("'Prompt and appropriate remedial action' must be <u>effective</u> action in order to exempt an employer from liability.")(emphasis added); *see e.g. Brooms v. Regal Tube Co.*, 881 F.2d 412, 421 (7th Cir. 1989)(remedial measures not effective where investigation consisted only of interviews with the victim and the harasser and corrective action of postponement of merit increase and verbal reprimand did not prevent further harassment); (*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000)(Holding that whether complaint procedures found in a policy are reasonable and effective depends on "[t]he

employer's size, location, geographic scope, organizational structure, and industry segment.").

The evidence in the record establishes that despite seeing the conduct the defendants took no action until two weeks before plaintiffs termination.  And this testimony comes for the Vaughn and not the plaintiff.  She doesn't remember Vaughn telling her he had spoken to Taylor nor does she remember if the conduct continued after the last time she told Vaughn about it.  She does say however, that Vaughn and other managers had seen the conduct and she had complained about it months before her termination and nothing had been done.

In *Munn*, the Court set out this Circuit's standard for questioning the appropriateness of a remedial action at the summary judgment stage:

> 'An employer is absolved from liability if it takes prompt and *appropriate* remedial action in response to the harassment.' *Sparks v. Regional Medical Ctr. Bd.*, 792 F.Supp 735, 744 (N.D.Ala. 1992)(citing *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989)(emphasis added).  Because the jury must find that the action was 'reasonably calculated to end the harassment,' it necessarily must determine the appropriateness of the actions taken (or not taken) by Defendant.  *Katz*, 709 F.2d at 256.  'What is appropriate remedial action will necessarily depend on the particular facts of the case--the severity and persistence of the harassment, and the effectiveness of any remedial steps.' *Waltman v. International Paper Co.,* 875 F.2d 468, 479 (5th Cir. 1989).  Genuine questions of fact which arise in this regard will preclude summary judgment.  *Id.*

*Munn*, 906 F.Supp. at 1583. (emphasis original).

Therefore, based on all of the evidence in the record and the argument presented by plaintiff, there are genuine issues of fact as to plaintiffs' hostile environment claims and summary judgment is due to be denied.

**B. Plaintiffs' Retaliation Claims.**

     **1. Plaintiff's prima facie case.**

Plaintiff contends that defendant terminated her in retaliation for engaging in protected activity. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Pipkens v. City of Temple Terrace, Florida*, 267 F.3d 1197 (11th Cir. 2001). The plaintiffs can prove all these elements.

First, the evidence in the record clearly establishes that plaintiff engaged in protected activity by complaining of the sexual harassment in which was subjected. The evidence establishes that such complaints were made to Keely and Bobby Vaughn. It is undisputed that she complained about Zach Taylor approximately two weeks before her termination. Such complaints satisfy plaintiff's burden of showing that she participated in protected activity.

There can also be no dispute that plaintiff suffered an adverse action in the form of her May, 2004 termination. "A tangible employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F.3d 501, 512 (2000)(citing *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. *See also Gupta*, 212 F. 3d at 587 (quotation omitted)(citation omitted)("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.").

As for causal connection, the Eleventh Circuit has repeatedly interpreted the "casual link requirement" broadly. *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). In order to establish a causal connection between the employee's protected activity and the adverse employment action, a plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth*, 231 F.3d 791, 799 (11th Cir. 2000)(quoting *Clover v. Total Sys.*

*Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999). Generally, "close temporal proximity between an employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a general issue of material fact of a causal connection." *Brungart supra* at 799 (11th Cir. 2000)(citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). A plaintiff must also show that the employer had notice of the employee's engagement in the protected activity. *Clover supra* 176 F.3d at 1355-56.

In *Meeks*, *Reichhold*, and *Goldsmith* the Court stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." 15 F.3d at 1021, 988 F.2d at 1571-72, and 996 F.2d at 1163. The Eleventh Circuit has further stated that:

> The casual link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. . . . Rather, we construe the "casual link" element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated. At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action. (internal cites omitted).

*Hairston*, 9 F.3d at 920; (quoting, *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir.) and *Goldsmith*, 996 F.2d at 1163).

In the instant case, the evidence is clear that the plaintiff reported the sexually harassing conduct of Zach Taylor to Bobby Vaughn approximately two weeks before her termination and Vaughn admitted that she reported it to him. Therefore, the causal link has been established.

## 2. The defendant's reason for plaintiff's termination is pretextual.

"Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action." *Olmstead v. Taco Bell Corporation*, 141 F.3d 1457, 1160 (11th Cir. 1998). Additionally, in the Eleventh Circuit, "where a plaintiff's prima facie case is established, but the employer *fails* to meet its' burden of production, the unrequited presumption of discrimination stands."*Turnes v. AmSouth Bank*, 36 F.3d 1057,1061(11th Cir. 1994)(citing *Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227,1236 (11th Cir. 1985)(emphasis original). "Moreover, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination." *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir. 1996).

The defendant's articulated reason for terminating the plaintiff is for drinking alcohol at work. Plaintiff admitted that such a rule existed and that she violated it. However, all of defendant's evidence that the reason is legitimate stops there. They present no evidence that either establishes such a policy or shows that the punishment is termination. They present no evidence to show the difference in degree of severity between violating the sexual harassment policy and the drinking at work policy. Bobby Vaughn testified that the manager has discretion in determining how to handle sexual harassment complaints. It can be inferred that he also has this same discretion in how to handle drinking at work. He was told by Plaintiff that she only

took one sip and that the manager on duty had known she was doing it.  She also told him that Erica and Zach Taylor had done the same thing that night.  Therefore, evidence exists that he made a subjective decision to terminate her for drinking after knowing she had complained of sexual harassment, but not doing anything to the male who was reported.  Nor is there any evidence that he took any action against Erica or Zach after being told they had done the same thing.  Also telling is who reported Plaintiff to Vaughn.  It was Taylor, the accused.  And defendant's documents produced to the EEOC show that even though there are more than 120 employees that

have worked in 2003 and 2004 and the numbers of males and females is almost equal, only two employees have been terminated for violating company rules and they are female.  This supports plaintiff's contention in her EEOC charge that the women who complained were treated like her.

Plaintiff has comparators who were treated differently, and circumstantial evidence that the decision-maker made a subjective decision knowing that she had complained of harassment. Nor did the decision-maker take any effort to follow the harassment policy or discipline the harasser in any way.  Of course, this is because the evidence shows that he condoned the harassment.  The person who reported Plaintiff for drinking at work was the harasser himself. All of this evidence more than creates a question of fact for a jury as to the reason for Plaintiff's discharge.  The motion for summary judgment on the retaliation claim is without merit and should be overruled.

### C.  Plaintiffs' State Law Claims

In addition to her Title VII sexual harassment and retaliation claim, Plaintiff also asserts state law claims of invasion of privacy, assault and battery,  and outrage.  When viewing the

evidence in the light most favorable to plaintiffs, disputed issues of fact exist and summary judgment should be denied as to these claims.

### 1.  Employer Liability

An employer can be held liable for an employee's harassment or intentional torts if the actions were done in the line and scope of his employment, done in furtherance of the business, or that the employer participated in, authorized, or ratified the wrongful or tortuous actions. *Patterson v. Augat Wiring Systems, Inc.*, 944 F.Supp. 1509, 1521 (M.D. Ala. 1996).  The Alabama Supreme Court stated the following regarding employer liability: "The employer is vicariously liable for acts of its

employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or for acts done for the furtherance of the employer's interest.  The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action." *Potts v. BE & K Constr. Co.*  604 So.2d 398, 400 (Ala. 1992).

Under Alabama law, a plaintiff can establish employer ratification by showing the employer "(1) had actual knowledge of the tortuous conduct of the offending employee and that the tortuous conduct was directed at and visited upon the complaining employee; (2) that based upon his knowledge, the employer knew or should have known that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation." *Potts*, 604 So.2d at 400.

Based on the facts and argument previously presented in this brief,  a reasonable jury could find that (1) defendant had actual knowledge of the sexual harassment by its employees;

(2) that defendant knew, or should have known, of the sexual harassment; and (3) that defendant

failed to take "adequate" steps to remedy the situation.[2]

### 2. Plaintiff's Invasion of Privacy Claim

Four acts may constitute an invasion of privacy according to Alabama law:

> "(1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity
> which violates the ordinary decencies; (3) putting the plaintiff in a false but not
> necessarily defamatory position in the public eye; and (4) the appropriation of
> some element of the plaintiff's personality for a commercial use."

*Phillips v. Smalley Maintenance Services, Inc.*, 435 So.2d 705, 708 (Ala. 1983). This case

involves an intrusion upon plaintiff's physical solitude.  In this case, there has been a "wrongful

intrusion into [the plaintiff's] private activities in such manner so as to outrage or to cause mental

suffering, shame or humiliation to a person of ordinary sensibilities."  *Hogin v. Cottingham*, 533

So.2d 525, 530-31, (Ala. 1988).  Cases involving sexual harassment allegations are sufficient to

state a claim of invasion of privacy through wrongful intrusion.  *Busby v. Truswal Systems Corp*.,

551 So.2d 322, 324 (Ala. 1989); *Phillips*, 435 So.2d at 708 (activities associated with sexual

harassment fall under the "intrusion upon the plaintiff's physical solitude or seclusion").

Invasion of privacy will be found when extremely offensive statements are made regarding an

employee's body, sexual habits, as well as comments regarding wanting to have sexual relations

with the employee.  *Busby*, 551 So.2d at 324.

In *Phillips,* invasion of privacy was found when an employer repeatedly questioned an

employee about her sexual experiences over a period of a few months.  435 So.2d 705 (Ala.

1983).   In *Busby*, invasion of privacy was found when an employer was aware of and failed to

stop intrusive comments and questions regarding an employee's body, clothing and sexual habits.

---

[2]Plaintiffs adopt the argument and evidence presented on these points in the discussion of
plaintiffs' hostile environment claims.

551 So.2d 322, 327 (Ala. 1989).  In *Brassfield v. Jack McLendon Furniture*, invasion of privacy was found when an employer knew and failed to stop the intrusive conduct of an employee who frequently questioned and harassed a female employee regarding her sexual life and made offensive comments regarding her bod.

953 F.Supp. 1438, 1455-57 (M.D. Ala. 1996).

Here, plaintiff was harassed through sexually offensive touching, and termination.[3]  A jury could reasonably determine from the evidence in the record that defendant employees intruded into plaintiff's sex life in an offensive and objectionable manner, thus, invading their right to privacy.  *Busby,* 551 So.2d 322, 324 (Ala. 1989).

As discussed earlier, the facts and evidence establish that plaintiff complained on numerous occasions to management about the harassing and tortuous conduct.  The lack of discipline, reporting, and investigation, along with the continued harassment following plaintiff's complaints and defendant's knowledge of the conduct, establishes that defendant did not take adequate action.  Based on the facts and argument asserted in the previous sections regarding plaintiffs' hostile environment claim, a reasonable jury could infer that the defendant knew or should of known of the tortuous conduct and did not take adequate steps to remedy it.

> "Evidence that an employer, after learning of the tortuous conduct, failed to stop the tortuous conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate."

*Potts,* 604 So.2d at 401.  In the case at bar, there is clearly a question of fact as to both whether defendant knew of such conduct and whether or not it took steps to stop the tortuous conduct.  When viewing all evidence in the light most favorable to plaintiffs, a reasonable jury could

---

[3]See Plaintiffs' Statement of Facts and plaintiffs' argument regarding the hostile environment claims for a complete recitation of the sexually harassing conduct.

determine that defendant is directly liable for invasion of privacy because of its ratification of the conduct.

### 3. Plaintiff's Assault and Battery Claim

Alabama law defines assault and battery as:

> "Any touching by one person of the person or clothes of another in rudeness, or in anger, or in a hostile manner, is an assault and battery. An intent to injure is not an essential element." *Seigel v. Long,* 169 Ala. 79, 53 So. 753 (1910)

In the instant case, it is clear that an assault and battery was committed on the plaintiff each time she was slapped on the butt and each time she her breasts were grabbed and fondled. It is also clear that Ruby Tuesday ratified or condoned the attacks by not taking appropriate action to prevent them, and in not taking appropriate action after seeing the assaults occur. The evidence is clear that Keely and Bobby Vaughn saw the assaults as they were happening. This coupled with the complete lack of effort to prevent the assaults is ratification of the assaults. The action of Vaughn when he saw the conduct of smiling and walking away is clear ratification of the assaults. Summary judgment should be denied on plaintiff's assault and battery claim.

### 4. Plaintiff's Outrage Claim

. In order to make a claim for the tort of outrage, the plaintiff must make a showing of the following elements: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct, (2) the conduct was extreme and outrageous, and (3) the stress was severe. *Moore v. Spiller Associated Services, Inc.* 598 So.2d 835 (Ala. 1992). Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to each of these elements and the defendant's Motion for summary judgment is

due to be dismissed.[4]

The tort of outrage is determined on a case by case basis.  Facts which may not amount to outrage in one situation may well constitute outrage in another situation, such as, when the person committing the outrageous conduct has a sufficient degree of control over his victim. An employee in the work place stands as a particularly vulnerable target in the scope of the harassing supervisor to whom she reports or the predator co-employee who has been reported to management with no action taken.  In *American Road Service v. Inmon*, 394 So.2d 361, 365 (Ala. 1980), the Alabama Supreme Court defined the tort of outrage as "conduct that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society."  Moreover, the court found that "anyone who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."  *Id.* at 362.  In the past, courts have been reluctant to apply the tort of outrage, but recently, now that it is well-known in the workplace that sexual harassment is clearly against the law, courts are beginning to allow the jury to decide what conduct constitutes outrage in sexual harassment cases.  In *Quillen v. American Tobacco Co.*, 874 F.Supp. 1285 (M.D. Ala 1995), the Court found that despite the "limited nature of the tort," a question of fact existed as to whether the harasser's conduct was outrageous. In *Martin v. Norfolk Southern Railway Co.*, 926 F.Supp. 1044 (N.D. Ala 1996), although the Court determined the plaintiff did not have a claim of same sex harassment, the court sent the outrage claim to the jury. In that same sex harassment case, Judge Nelson stated that "the court is not prepared to hold as a matter of law that the alleged conduct in this case does not constitute

---

[4]See Plaintiffs' Statement of Facts and plaintiffs' argument regarding the hostile environment claims for a complete recitation of the sexually harassing conduct.

conduct "utterly intolerable in a civilized society;" thus, the determination will be left for the jury. Accordingly, summary judgement as to the outrage claim against the individual defendants will not be denied." (*Id.* at 1051).

In the instant case, the plaintiff had complained early and often about the sexual harassment that was occurring in the work place. The defendant choose to ignore it, thus ratifying and condoning the actions of the co-employees. The action of grabbing Plaintiff's breasts is outrageous. Clearly, plaintiff

has created a question of fact as to her claim for outrage. She has suffered emotionally and should be allowed to recover for it by bringing this state claim.

### 5. Plaintiff's Negligent and/or Wanton Supervision and Retention Claim

Defendant is correct that an employer can only be held responsible for negligent and/or wanton supervision and retention when notice or knowledge, either actual or presumed of such unfitness has

been brought to him. *Big B, Inc. v. Cottingham,* 634 So.2d 999, 1003 (Ala. 1993). Thus, liability depends on the plaintiff establishing through admissible evidence that the employer knew of the incompetence of the employee. See *Id.* As stated by the defendants in their brief, the plaintiff must prove the negligence by proper evidence, such as showing specific acts of incompetence and showing the knowledge of the employer. See *Id.*

Here, the evidence established by the plaintiff is that the actions of the male employees who would slap the butts of the women was seen by a manager on duty (Keely) and the restaurant manager, Bobby Vaughn. The evidence also establishes that Bobby Vaughn saw Zack Taylor

grab and fondle Plaintiff's breasts.[5]  Thus, the negligent conduct has been established and notice

has also been established.  Summary judgment is therefore due to be denied on plaintiff's

negligent and/or wanton supervision and retention claim.

**IV.**    **CONCLUSION**

For all the foregoing reasons, the Court should deny summary judgment on all of

plaintiff's claims that have been addressed in this response and allow a jury to determine if she

should prevail on these claims.

Respectfully submitted

 s/C. Michael Quinn
C. Michael Quinn
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing by placing in the U.S. Mail postage prepaid to
the following counsel:

Cornelius R. Heusel
Jennifer A Faroldi
JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE L.L.P.
201 St. Charles Avenue
New Orleans, LA 70170-5100


Done this   6th   day of Nov , 2006


 s/C. Michael Quinn
Of Counsel

---

[5]See Plaintiffs' Statement of Facts and plaintiffs' argument regarding the hostile environment
claims for a complete recitation of the sexually harassing conduct.